NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200399-U

NO. 4-20-0399

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 11, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| In re M.H., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | McLean County |
| Petitioner-Appellee, | ) | No. 20JA63 |
| v. | ) | |
| Marshall H., | ) | Honorable |
| Respondent-Appellant). | ) | J. Brian Goldrick, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1   *Held*:   After a valid and voluntary relinquishment of his parental rights in a parentage action, respondent was not considered a "parent" within the meaning of the Juvenile Court Act in the pending adjudicatory proceedings.

¶ 2   In May 2020, the State filed a petition for adjudication of neglect with respect to M.H., the eight-year-old child of J.H., who is not a party to this appeal, and respondent, Marshall H. Although the allegations pertained only to J.H.'s conduct, respondent was named as the putative father. However, the State soon learned from J.H. that respondent had "signed over his parental rights at [M.H.'s] birth." The State moved to amend the petition to remove respondent as a party. Respondent moved to have himself included in the visitation plan. After a hearing on the dueling motions, the court found respondent had previously, unequivocally, and permanently relinquished his parental rights to M.H. and was thereby precluded from participating in the current adjudicatory proceedings.

¶ 3        On appeal, respondent argues the trial court erred in excluding him as a party from the adjudicatory proceedings because the 2012 agreed order, which incorporated and accepted respondent's consent to adopt, executed in the parties' parentage action, did not terminate respondent's parental rights as a matter of law.

¶ 4                              I. BACKGROUND

¶ 5        Upon M.H.'s birth in 2011, J.H. filed a parentage action (McLean County case No. 11-F-300), seeking the establishment of respondent's paternity and an award of child custody and support. In January 2012, respondent, who was then 18 years old, was confirmed through paternity deoxyribonucleic acid (DNA) testing to be the biological father of M.H. However, the minor resided exclusively with J.H. On May 29, 2012, respondent executed a document entitled "Final and Irrevocable Consent to Adoption," wherein he consented and agreed to the adoption of M.H. and "irrevocably and permanently g[a]ve up all custody and other parental rights" to M.H. The same day, the trial court entered an Agreed Order, noting the parties had "reached an agreement which resolve[d] all issues" and respondent had "duly executed before [the] court a final and irrevocable consent to adoption." Respondent's consent was attached to the court's order as an exhibit. In its order, the court also awarded J.H. permanent sole custody, terminated respondent's visitation rights, vacated respondent's obligation to pay child support, allowed J.H. to remove M.H. from the state without court approval, and prohibited respondent from seeking guardianship of M.H. in the event of J.H.'s death.

¶ 6        Eight years later, on May 18, 2020, emergency personnel were dispatched to a residence for an apparent heart attack. There, they found J.H. unconscious and not breathing. J.H. and M.H. were visiting at a friend's house. The friend, C.P., and M.H. had left the house to search for J.H.'s boyfriend's stolen vehicle. While they were away, J.H. found a syringe and, believing it

contained "ice," her drug of choice, she injected the substance into her arm. As it turned out, the syringe contained heroin, and J.H. overdosed. The police officer who first arrived on the scene revived J.H. after administering CPR and Narcan—a drug which reversed the effects of the overdose. M.H. was taken into protective custody and placed with her maternal grandfather.

¶ 7 On May 21, 2020, the State filed a petition for adjudication of wardship, alleging M.H. was a neglected minor pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2018)) in that her environment was injurious to her welfare when she resided with J.H. due to M.H.'s exposure to substance abuse. Respondent was listed as the putative father and was given notice of the proceedings, though no allegations were directed toward him.

¶ 8 At the May 21, 2020, shelter-care hearing, where respondent appeared via telephone, his counsel asked that the minor be placed with respondent. The trial court, noting the order confirming respondent's paternity, acknowledged respondent's request. However, the court also noted that respondent had signed a final and irrevocable consent to adopt, seemingly relinquishing all of his rights to the minor. Given the signed consent and the accompanying agreed order, the court denied respondent's request for placement, stating: "[T]here's a question about whether he has any rights to this child at this time. So, until that issue is fully vetted, so to speak, I'm not going to allow the agency to place this minor with [respondent]."

¶ 9 On July 20, 2020, the State filed a motion to amend the petition for adjudication, seeking to remove respondent as a party. The State alleged the final and irrevocable consent to adopt signed by respondent in 2012 completely and fully terminated his parental rights to M.H., thereby removing his status as a parent by law. Respondent filed a motion for visitation with M.H., asking the trial court to review the parent-child visiting plan. Respondent claimed he had not

waived his rights to be included in the plan and that such contact would be in M.H.'s best interests.

¶ 10　　　　On July 23, 2020, the trial court conducted a hearing on the pending motions. With respect to its motion to amend the petition to remove respondent as a party, the State argued that section 1-3(11) of the Juvenile Court Act (705 ILCS 405/1-3(11) (West 2018)) specifically excluded respondent under the definition of a "parent." That section, the State argued, provides that a "parent" under the meaning of the Juvenile Court Act "does not include a parent whose rights in respect to the minor have been terminated in any manner provided by law." *Id.* To the contrary, respondent argued that his signed consent to adopt did not "actually constitute an order terminating parental rights or a judgment of adoption." The court, after reviewing the 2012 consent and agreed order, found respondent had "relinquished his rights, gave up all parental rights and responsibilities." The court struck respondent as a party in this case.

¶ 11　　　　This appeal followed.

¶ 12　　　　　　　　　　　　　　　II. ANALYSIS

¶ 13　　　　The issue presented in this appeal is whether the final and irrevocable consent to adopt that respondent signed in 2012 involving M.H., while involved in a parentage case, constituted a termination of his parental rights so as to preclude him as a party in the current adjudication-of-neglect case, also involving M.H.

¶ 14　　　　Respondent claims the 2012 agreed order, which incorporated his final and irrevocable consent to adopt, did not terminate his parental rights because the judge in that parentage case did not have jurisdiction to do so. Respondent relies on this court's decision in *In re A.S.B.*, 381 Ill. App. 3d 220 (2008), to support his argument.

¶ 15　　　　In *A.S.B.*, the mother filed a petition to terminate the father's parental rights to their minor child, alleging he was unfit. *A.S.B.*, 381 Ill. App. 3d at 220. After separate hearings, the trial

court found the father unfit on the ground of depravity and terminated his parental rights after considering the minor's best interests. *Id.* The father appealed, claiming the court lacked jurisdiction to terminate his parental rights because the mother's petition was not filed pursuant to either statute that would confer jurisdiction. *Id.* at 222. This court agreed with the father, noting that a proceeding to involuntarily terminate parental rights may only be brought under the statutory authority of the Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2012)) or the Adoption Act (750 ILCS 50/1 *et seq.* (West 2012)). *Id.* at 221 (citing *In re M.M.*, 156 Ill. 2d 53, 61 (1993)). We reversed the trial court's order terminating the father's parental rights because the court lacked the statutory authority to do so. *Id.* at 226.

¶ 16        Relying on *A.S.B.*, respondent argues that because the trial court did not consider a petition for adoption or a petition for adjudication of wardship before entering the agreed order in the parentage case, the court was without jurisdiction to terminate his parental rights. Accordingly, he claims, the agreed order did not effectively terminate his parental rights in a manner provided by law. We disagree.

¶ 17        It is true that respondent's consent was not executed within the confines of either the Juvenile Court Act or the Adoption Act. Rather, his consent was executed after a DNA test revealed his paternity in a parentage action filed by J.H. In that case, the court accepted respondent's consent and signed an agreed order incorporating that consent. The order (1) awarded J.H. sole custody of M.H., (2) terminated respondent's visitation rights to M.H., (3) relieved respondent of any child-support obligation, (4) allowed J.H. to permanently remove M.H. without leave of court, and (5) prohibited respondent from guardianship of M.H. in case of J.H.'s death. The order noted that respondent had indicated he wanted to "irrevocably and permanently give up all custody and other parental rights" to M.H.

¶ 18    A court in a parentage action does not have the authority to involuntarily terminate parental rights. Involuntary termination can only be maintained under the Juvenile Court Act or the Adoption Act. *In re Gwynne P.*, 215 Ill. 2d 340, 353 (2005) ("Where a parent has not consented to relinquishment of his or her parental rights, a court has no power to terminate the parent's rights involuntarily except as authorized by statute."). The purpose of the Parentage Act (750 ILCS 45/1 *et seq.* (West 2012)) is to provide a means by which the courts may legally *establish* a parent-child relationship. *J.S.A. v. M.H.*, 224 Ill. 2d 182, 198 (2007) (stating that under the Parentage Act, a father-child relationship may be established by presumption, by consent, or by judicial determination). It does not provide for the termination of a parent's right.

¶ 19    According to the Adoption Act, a parent may willingly surrender parental rights for purposes of an adoptive proceeding after meeting strict statutory criteria. See 750 ILCS 50/10 (West 2012). The legislature has provided the exact language that must accompany a surrender or a consent. *Id.* The two are different depending on the parent's intent. Each requires distinct language in that they each have a different purpose. See, *e.g.*, *In re Adoption of Samuel E.*, 401 Ill. App. 3d 250, 255 (2010) (quoting *In re Joseph B.*, 258 Ill. App. 3d 954, 964 (1994) (citing *In re Custody of Mitchell*, 115 Ill. App. 3d 169 (1983))). But both require the contemplation of the child's adoption.

¶ 20    In this case, respondent's consent mirrors the requirements set forth in section 10(A) of the Adoption Act (750 ILCS 50/10(A) (West 2012)), which is the general consent to adoption without the contemplation of a specific adoptee. However, the use of the form does not necessarily indicate that proceedings under the Adoption Act are required. Instead, it appears the form was used for guidance and ease of reference, as M.H.'s adoption was not contemplated at the time the parentage order was entered. In fact, at the hearing on the State's motion to remove

respondent as a party, the trial court stated: "Granted, based upon what we know here today, there's never been an attempt by anybody else to adopt this child, to the court's knowledge."

¶ 21　　　　Citing *A.S.B.*, respondent argues that because neither an adoption nor an adjudication of neglect was contemplated at the time of his consent, the parentage court lacked jurisdiction to order the termination. *A.S.B.*, 381 Ill. App. 3d at 225 ("[N]o proceeding to terminate parental rights exists outside the Juvenile Court Act (by way of a petition for the adjudication of wardship) or the Adoption Act (by way of an adoption petition)."). Respondent's reliance on *A.S.B.* for the proposition that the parentage court lacked jurisdiction to terminate respondent's parental rights is misplaced. When so finding, the *A.S.B.* court referred only to the *involuntary* termination of parental rights, not to a voluntary relinquishment. Here, the trial court, as part of the parentage case, entered the agreed order acknowledging respondent's irrevocable and permanent relinquishment of "all custody and other parental rights" to M.H. The court had jurisdiction over the parties and over the subject matter. The court was apparently satisfied the consent and accompanying order accurately reflected the parties' wishes and so ordered. The order was not timely challenged and thus, remains valid, binding, and enforceable.

¶ 22　　　　We conclude, after his 2012 full relinquishment of parental rights to M.H., respondent is not entitled to notice as a party respondent in the pending adjudicatory proceedings. As this court has previously observed, although "neither natural parent has died[,] *** respondent's voluntary relinquishment of parental rights is analogous to [a] death[.]" *In re Parentage of Unborn Child Brumfield*, 284 Ill. App. 3d 950, 956 (1996).

¶ 23　　　　　　　　　　　　　III. CONCLUSION

¶ 24　　　　For the reasons stated, we affirm the trial court's judgment.

¶ 25　　　　Affirmed.